UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:20-cv-167

| | |
|---|---|
| PATRICIA UZZELL,<br>TERESA WHITEHEAD,<br>GENE TAYLOR,<br>MELISSA HAYMAN, on<br>behalf of themselves, and<br>others similarly situated,<br><br>      Plaintiffs,<br><br><br><br>v.<br><br>MAYOR JEFF JOHNSON,<br>COMMISSIONER JUDY<br>MASON, COMMISSIONER<br>PEGGY LAMM, and<br>COMMISSIONER DAVID<br>JOHNSON, COMMISSIONER<br>MICHAEL BEST, in<br>their individual and official<br>capacities, the TOWN<br>OF LUCAMA, and the<br>CROSSROADS VOLUNTEER<br>FIRE DEPARTMENT, INC.<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br>**(Jury Trial Demanded)**<br>**(Class Action)** |

Plaintiffs Patricia Uzzell, Teresa Whitehead, Gene Taylor, and Melissa

Hayman (Plaintiffs), allege and state the following causes of actions against

Defendants Jeff Johnson, Judy Mason, Peggy Lamm, David Johnson, and Michael

-1-

Best, in their individual and official capacities, ("Individual Defendants") and the Town of Lucama and Crossroads Volunteer Fire Department ("CVFD"):

## PARTIES, JURISDICTION, AND VENUE

## PARTIES

1. Plaintiff Patricia Uzzell is a resident of Wilson County, North Carolina, and a paid member of the Board of Commissioners of the Town of Lucama, North Carolina.

2. Plaintiff Teresa Whitehead is a resident of Wilson County, North Carolina, and an employee of the Town of Lucama, North Carolina.

3. Gene Taylor is a resident of Wilson County, North Carolina, and an employee of the Town of Lucama, North Carolina.

4. Melissa Hayman is a resident of Wilson County, North Carolina, and an employee of the Town of Lucama, North Carolina.

5.     A.  Defendant Jeff Johnson is a resident of Wilson County, North Carolina, and is the Mayor and a member of the Board of Commissioners of the Town of Lucama, North Carolina, and a paid employee of the CVFD.

B.     Defendant Jeff Johnson is a joint employee of the Town and Fire Department.

C.     Defendant Jeff Johnson is the son of Commissioner David Johnson.

D.     Defendant Jeff Johnson serves as the Assistant Fire Chief for the CVFD.

2

E. Both Jeff Johnson and David Johnson are provided workers' compensation insurance as a result of their positions and a salary which is paid annually and from which taxes are deducted.

6. Defendant Judy Mason is a resident of Wilson County, North Carolina, and is a paid member of the Board of Commissioners of the Town of Lucama, North Carolina.

7. Defendant Peggy Lamm is a resident of Wilson County, North Carolina, and is a paid member of the Board of Commissioners of the Town of Lucama, North Carolina.

8. Defendant David Johnson is a resident of Wilson County, North Carolina, and is a paid member of the Board of Commissioners of the Town of Lucama, North Carolina.

9. Defendant Michael Best is a resident of Wilson County, North Carolina, and is a paid member of the Board of Commissioners of the Town of Lucama, North Carolina.

10. A. The Town of Lucama is chartered and incorporated under the laws of North Carolina and is a legal entity subject to suit as a city under N.C. Sess. Law ch. 117 (1977) and N.C. Gen. Stat. § 160A-11.

B. On all dates relevant to the actions which are the subject of this Complaint, the Town of Lucama had 11 full-time employees.

C. On all dates relevant to the actions which are the subject of this Complaint, the Town of Lucama was a joint employer of seven (7) part-time firefighter employees for whom the Town provided worker's compensation and "payroll," and other incidents of employment.

D. On all dates relevant to the actions which are the subject of this Complaint, the Town of Lucama provided a salary for its five Town Commissioners and the Town Mayor.

D. On all dates relevant to the actions which are the subject of this Complaint, the Town of Lucama was a public employer in Wilson County with more than 15 employees.

E. On all dates relevant to the actions which are the subject of this Complaint, the Town of Lucama was an employer for purposes of Title VII.

11. The CVFD is a non-profit corporation, incorporated in 1980, providing emergency services to the Town of Lucama.

## JURISDICTION

### Statutory Basis

12. Plaintiffs bring this action against Individual Defendants, the Town and CVFD for a declaratory judgment, injunctive relief, and damages pursuant to 42 U.S.C.A. §§ 1981 et seq. (including 42 U.S.C.A. § 1983 and 42 U.S.C. § 1985), 28 U.S.C. § 2201, and 28 U.S.C. § 2202, and the Fifth and Fourteenth amendments

4

to the United States Constitution, Title VII of the Civil Rights Act of 1991 and 1964, 42 U.S.C.A. §§ 2000e et seq., and Sections 1, 2, 19, and 32, and 36 of the North Carolina Constitution.

13. Jurisdiction is predicated on 28 U.S.C.A. § 1331, 28 U.S.C.A. § 1343(a)(3), 28 U.S.C.A. § 1343(a)(4), and 42 U.S.C.A. §§ 1981 et seq., and the Fourteenth amendment to the United States Constitution, Title VII of the Civil Rights Act of 1991 and 1964, 42 U.S.C.A. §§ 2000e et seq. Supplemental jurisdiction is predicated on 28 U.S.C. § 1367.

14. This action seeks redress for the deprivation of Plaintiff's constitutional and civil rights, which are guaranteed by the due process clauses and equal protection clauses of the Fifth amendment, and the due process and equal Protection Clauses of the Fourteenth amendment to the United States Constitution and the due process and equal protection clause under the North Carolina Constitution.

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Sections 1981, 1983, and 1985, the due process and equal protection clauses of the Fourteenth amendment of the United States Constitution, and Title VII of the Civil Rights Act of 1964 and 1991, as amended, all of which are federal causes of action, and may exercise supplemental jurisdiction over claims brought under the North Carolina laws and constitution.

**Class Action**

5

16. Plaintiffs also bring this action as a Class Action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who, during the applicable period allowed by the statute of limitation, who were subjected to discriminatory and unconstitutional treatment by the Town of Lucama because of their race or color and/or or their opposition to race and color and other impermissible kinds of discrimination and unconstitutional treatment.

17. The potential members of the Class are possibly numerous and therefore, are unknown at this time to Plaintiffs such that that joinder of all members is impracticable.

18. Plaintiffs' claims as employees and Town citizens are typical of the claims of the Class because Plaintiffs as employees and Town citizens have all sustained damages arising out of Defendants' wrongful conduct complained of herein.

19. Plaintiffs are representative parties who will fully and adequately protect the interests of the Class members.

20. Plaintiffs have retained counsel who are experienced in civil rights litigation.

21. Plaintiffs have no interests which are contrary to or in conflict with those of the Class Plaintiffs seek to represent.

22. A class action would be superior to all other available methods for the fair and efficient adjudication of this controversy, as such other class members identify themselves. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

23. The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudication could establish incompatible standards of conduct for defendant under the laws alleged herein.

24. Further, questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members in that defendant has acted on grounds generally applicable to the entire Class.

## Administrative Prerequisites
## (Title VII)

25. Plaintiffs timely filed charges of race discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) and were issued right to sue letters on the following dates:  Patricia Uzzell on January 22, 2020; Teresa Whitehead on January 22, 2020; Gene Taylor on January 23, 2020; and Melissa Hayman on January 28, 2020, which were received on or about three days after the date of each Notice.  (**Exhibit A – Plaintiffs' Notices of Right to Sue**) Therefore, Plaintiffs have met all administrative prerequisites under Title VII of the Civil Rights Act of 1964 and 1991, as amended from time to time.

## Relief Sought

26. The Plaintiffs' due process, equal protection, and liberty interests are protected by the Fifth and Fourteenth Amendment of the United States Constitution and section 19 of the North Carolina Constitution.  The rights of Plaintiffs to due

7

process and equal protection have been denied by the actions of Defendants and nothing can restore these rights to Plaintiffs as employees and Town citizens.

27. Defendants have sued their power, authority, and influence to either take or condone the taking of arbitrary, capricious, discriminatory, and unconstitutional actions based on race, ethnicity, and other protected categories including but not limited to speech and other rights protected by other amendments. These actions include but are not limited to the destruction of public records, causing those under his control as Fire Chief to withhold emergency services from certain citizens, the arbitrary and capricious enforcement of Town ordinances and laws, the denial of employment, the denial of the terms and conditions and benefits to all employees similarly situated and to all non-White citizens and potential employees, the uneven conferral of other benefits of Town citizenship to non-White citizens and other as yet unknown but discoverable violations of the civil and constitutional rights and privileges withheld for impermissible and illegal reasons.

28. Plaintiffs' motivations for pursuing this action are to obtain a removal of the current commissioners who refuse to censure or remove Johnson from his position on the Board of Commissioners with the result of providing to the citizens and employees of the Town of Lucama the enjoyment of rights and privileges not based on impermissible characteristics, including but not limited to characteristics such as race and color. In addition, Plaintiffs seek Orders

restoring the good reputation of Plaintiffs as employees and/or elected officials and citizens of the Town of Lucama and Wilson County and damages to compensate them for the injuries they suffered as a result of Defendants' illegal or discriminatory actions. Plaintiffs also seek to be made whole for all other physical and emotional damage that has been done to Plaintiffs by Defendants or condoned by Defendants by their failure to take action to stop the damages.

29. The conduct of the Defendants, unless and until immediately enjoined and restrained by order of this court, has already caused and will continue to cause great and irreparable injury, not only to the Plaintiffs, but also to other Black and African-American residents and non-Black or African American residents who have opposed the conduct and actions of the Defendants and who are entitled to the same rights and privileges afforded all citizens of the Town and County.

30. No alternative dispute resolution procedures or grievance procedures have been offered to Plaintiffs. At this point, no such offer would be of assistance in resolving the immediate and ongoing harm to all of the individuals involved. Plaintiffs' requests for assistance from the League of Municipalities made prior to the filing of this action in addressing the situation have either gone unheeded, have received inadequate response, or none at all. Further, the League of Municipalities has acted on behalf of Defendants as agents to the detriment of

9

the Plaintiffs and other similarly situated to the Plaintiffs since Plaintiffs made a complaint to the Equal Employment Opportunity Commission.

31. Defendants have and are willfully continuing to violate their obligations to Plaintiffs, under the United States and North Carolina constitutions. Only the immediate intervention of this court, by way of injunctive relief or mandamus will prevent further harm to the Plaintiffs and other citizens of the Town and County. There will be no prejudice from any order of injunctive relief or mandamus, as it will merely maintain the status quo until the matter can be further reviewed by this court or the ultimate trier of fact.

## VENUE

32. A. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the unlawful acts were committed in Wilson County, North Carolina and because Plaintiffs live and work in Wilson County and there is no other district that has substantial connection to the claim.

B. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants are members of the Board of Commissioners of the Town of Lucama.

## STATEMENT OF FACTS

10

33. Plaintiff Uzzell was the first African-American elected to the Town Board of Commissioners and was elected in November of 2017 and began serving in January 2018.

34. At the time Plaintiff Uzzell was elected the Town of Lucama in 2017, the Town had no African-American employees.

35. Plaintiff Whitehead is the first African-American Town Administrator of the Town and was hired after Commissioner Uzzell was elected and was hired in April 2019 ~~after the termination of previous administrator by the Town Board of Commissioners~~. Plaintiff Whitehead is the supervisor of all of the Town employees and her decisions are final except to the  to the extent that the Town Board intervenes in her supervision of such employees.

36. Town Ordinance 30.05 provides that the Board is "expressly authorized to:

   (A) Prescribe rules and regulations as it shall deem necessary or expedient for the conduct of administrative employees subject to its authority and shall have the power to revoke, suspend, or amend any rule or regulation; . . .

   (B) . . .

   (C) Overrule officials, set aside any action taken by a town administrative official and may supersede him or her in the functions of his or her office; . . . .

37. Town Ordinance 32.15 created the Town Police Department which consists of the Chief of Police and officers "as the Town Board deems necessary" who "shall hold

11

office at the pleasure of the Town Board and shall receive compensation as the Town Board shall direct." Upon information and belief, two Wilson County sheriff's employees provide these services and thus are joint employees of the Town and Wilson County.

38. The administrative departments of the Town are composed of the Electric Department, the Water and Sewer Department, the Street Department, the Police Department, and the Fire Department. Town Ordinance 32.01.

39. Town Ordinance 32.35 provides that the Chief of the Fire Department shall be appointed by members of the Fire Department subject to the approval of the Town Board and "shall be removed only for just cause and after a public hearing before the Town Board."

40. Ordinance 33.01 provides that "[a]ll checks and drafts issued by the town . . . must be signed by the Finance Officer and countersigned by a designated town official."

41. The Town Board of Commissioners hires and fires all Town employees and has always exercised that authority, based on information and belief, according to the authority it derives from Town Ordinance 31.01 "Employees to Serve at the Pleasure of the Board."

42. Upon information and belief, the Town removed the previous Administrator from her position because of inappropriate conduct. Nevertheless, the Town provided that Administrator with a severance package of a year's salary and benefits. The

12

town was not legally obligated and had no legal authority to bestow those benefits on the administrator but did so because of her close, personal relationship with Board members.

43. On information and belief, the previous Administrator had influenced members of the Town board to vote to hire her son and place him under her supervision as administrator. During the time her son was employed by the town, the previous Administrator resisted any attempt to discipline or otherwise supervise her son. After some months the town terminated the son's employment. As a result of her son's termination, the previous Administrator developed animosity toward towards her son's direct supervisor and member of the Town Board.

44. Plaintiff Hayman is an African American employee who was also hired after Plaintiff Uzzell's election and Plaintiff Whitehead's hiring.

45. Plaintiff Hare is a White employee who was hired after Plaintiff Uzzell's election and together with Plaintiff Whitehead, she serves as a Clerk and is supervised by Plaintiff Whitehead.

46. Plaintiff Gene Taylor is African-American and was hired after Plaintiff Uzzell's election. He was the first African-American employee ever hired by the Town of Lucama.

47. Defendant Johnson has served as a town commissioner for over forty years. He also serves as the Fire Chief of the fire department.

48. Upon information and belief, he regularly instructs Town employees in the Public Works department regarding their job duties and responsibilities.

49. Plaintiff's son, Defendant Jeff Johnson, serves as the Mayor of the Town of Lucama and also as the assistant Fire Chief.

50. Since the initiation of the Plaintiffs' complaints, he has refused to interact with the Town Administrator and has essentially by-passed her and conducts the Town's business from the Fire department without communicating to any substantial extent with Plaintiff Whitehead, the Town Administrator.

51. The CVFD has the following responsibilities: " . . . to render first aid service in conjunction with the operation of volunteer ambulances; to save life, relive suffering of the injured , and promote safety in all branches; to assist in transporting of the ill, injured and infirm . . . ." Amendment to CVFD Articles of Incorporation.

52. Upon information and belief, for year Defendant Johnson has used racist epithets towards African and other non-White Americans.

53. Upon information and belief, Defendant Johnson has also engaged in direct supervisory responsibility over Town employees including those engaged in performing duties in the public works section, including electrical, water and sewer services, and the employees of the fire department.

14

54. His use of racist epithets and his making threatening remarks about African American employees first came to the attention of Plaintiff Uzzell in April of 2019, after Plaintiff Whitehead was hired as Town Administrator.

55. Upon information and belief, multiple town employees have heard Defendant David Johnson use racial epithets towards the Town's African-American town employees and refer to them as "niggers." Upon information and belief, these Town employees complained about his use of the word and the fact that it created a hostile work environment, but Defendant David Johnson continued to use the word to refer to Black/African American individuals.

56. Upon information and belief, Plaintiffs and other citizens in the Town of Lucama were and are fearful of Defendant Johnson based on comments he has made about using violence, being destructive, seeking revenge, and because of the power he wielded as the Fire Chief.

57. Plaintiffs and citizens are substantially if not exclusively dependent on the CVFD for essential life support services and as fire chief, Defendant David Johnson and his son Defendant Jeff Johnson have substantial control over CVFD services.

58. Upon information and belief, in 2015, Annette Flowers was elected to the Board of Commissioners, getting more votes than a 30 years incumbent, Leo Bass and Peggy Lamm, a twenty year incumber on the Town Board of Commissioners.

59. Because Flowers was not part of Defendant Johnson's and under his influence, she was made to feel like an outcast by Johnson and the other Commissioners from the beginning of her tenure.

60. Upon information and belief, during her tenure as Commissioner, Flowers repeatedly questioned whether Town ordinances, policies and procedures were being enforced evenly with regard to all citizens of the Town. She repeatedly sought clarification about the source of the Town's authority and the application of specific ordinances to specific groups of citizens in the Town. She was met with resistance and a lack of cooperation every time she sought to pursue this topic of how the Town was treating different citizens differently.

61. For example, and upon information and belief, after she started serving on the Board, she became interested in trying to get the town to take a role in restoring Main Street and some of its buildings, and one historic building in particular. Flowers had been told by the individuals involved in restoration in North Carolina there was money available to help with the rehabilitation of this building and the town could apply for it.

62. Upon information and belief, at a board meeting, where this idea was discussed, David Johnson opposed this idea and stated that he and an engineer had walked through the building and there were places in the floors you could put your foot through and therefore that the building was not a good project for the town to be

16

involved with.  As usual with her ideas and proposals, when she proposed ideas to the Town Board, her motion was voted down 4-1.

63. Upon information and belief, after the meeting, Flowers called the engineer who told Flowers that he and Defendant Johnson did not go inside the building; they only walked around it.  At the next meeting, she confronted Johnson about his statements made at the previous meeting, and he stated publicly to her, "I've lied to you before and I'll lie to you again . . . ."

64. Upon information and belief, eventually, after Flowers' husband of 56 years died, and she was diagnosed with lung cancer, she decided that she could no longer deal with all of the dissension on the Board and the resistance to her efforts to enforce the Town's ordinances evenly and she finally resigned on April 5, 2019.

65. Upon information and belief, on May 6, 2019,  on the way to the dedication of a building in honor or her husband, Flowers fell in  her carport and broke her knee cap.  She called a neighbor to help her who called 911.  The 911 responders for Lucama are the CVFD.

66. Upon information and belief, the CVFD did not respond to the 911 call to Mrs. Flowers' address.  Eventually, 911 responders showed upon from a different fire station some distance away.  Flowers was unable to walk for 6 weeks, had a brace thereafter, and required five months of  rehabilitation,

67. Upon information and belief, Flowers later spoke with Defendant David Johnson and questioned him about the fire department not responding when she broke her knee.

68. At first, Johnson denied that the fire department got the call. However, when Flowers pressed him, Defendant David Johnson then stated to her, again, that he had lied to her before and that he would probably lie to her again. Flowers now lives in constant fear that she is in danger of suffering physical from Defendant David Johnson or someone acting at his behest.

69. Upon information and belief, on August 22, 2019, Defendant David Johnson came to the town hall building around 4:45pm in his official capacity as fire chief. He engaged in conversation with Town employees Megan Hare, Daniel Boyette, and Linwood Edmundson, about a town citizen who had called 911 because their electricity had been cut off and a resident in the home was on dialysis and had an emergency need for electricity. During this discussion, Defendant Johnson stated that he would blow someone's brains out with a gun because he "didn't get people back," instead he "got even." He made additional references to blowing up a car and these remarks were also heard by Plaintiff Uzzell.

70. Upon information and belief, on August 26, 2019, Defendant David Johnson as Fire Chief was called in to do a fire inspection on a town citizen with the last name Edmondson. Plaintiff Whitehead heard Defendant Johnson ask Town

18

employee Megan Hare if the citizen for whom they were doing the inspection was Black.

71. Defendant David Johnson had previously told Plaintiff that no employees were going to receive a raise and Plaintiff Uzzell witnessed him make this remark as well.

72. Upon information and belief, in September 2019, Plaintiff Taylor, who works as one of two employees in the public works department responsible for the Town's electrical equipment and lines, learned that another employee who was White but who has less seniority than Plaintiff Taylor had received a raise.

73. Upon information and belief, Plaintiff Taylor had been hired when one of the previous employees who worked as a lineman quit after interference by the Town Board into the assignment of duties in the public works department. A dispute arose at some point after Taylor was hired about whether Taylor had been hired to perform lineman duties and was able to perform them when hired or whether alternatively Taylor indicated that he was able and willing to be trained to perform lineman duties.

74. Upon information and belief, an employee hired after Taylor was instructed by his supervisor and by the Town Administrator to teach Taylor how to perform lineman duties but refused at the direction of Defendant David Johnson who instructed the employee not to teach Taylor how to be a lineman. This same

19

employee was eventually given an increase in his wages because he could perform lineman duties, the same duties which he refused to teach Plaintiff Taylor.

75. Upon information and belief, on or about October 15, 2019, Defendant David Johnson approached two Town of Lucama employees, Chris Bailey and Daniel Boyette, who were White. In his conversation with these employees, Johnson used racial slurs in referring to town employees who were not White. Specifically, Johnson referred to Plaintiff Melissa Hayman, a newly hired employee, as a "monkey nigger." Johnson then called Plaintiff Teresa Whitehead a "stupid nigger." Johnson also referred to Plaintiff Patricia Uzzell as a "nigger" several times in the conversation.

76. Both Bailey and Boyette reported this conversation to Plaintiff Uzzell and they told Uzzell that they felt that Defendant Johnson's racial slurs and other behavior a hostile work environment. Johnson also approached Town employee Megan Hare and told her that he had to get rid of all the "niggers" which Hare subsequently told one or more of the Plaintiffs.

77. Plaintiff Hayman became aware of Defendant Johnson's repeated use of the racial slur "nigger" to refer to her and other Black employees on or about October 24, 2019. She learned that he had referred to her as "monkey nigger" and that he has referred to other Black town employees as "stupid nigger" and "black little nigger" and that he had made a comment that the Town needed to get rid of the "niggers."

78. Defendant Johnson has freely made negative remarks about Hispanic citizens in front of Plaintiff Hayman, on the assumption that Hayman, who is black, would not be offended by such remarks.

79. Upon information and belief, former Mayor Jed Simpson resigned in October 2019 and he told citizens of the town that he was moving out of the Town jurisdiction. Upon information and belief, unofficially he has stated that he was not interested in continuing to serve on the Board because of the increasing tension over Defendant Johnson's remarks and use of racist epithets.

80. On November 14, 2019, Plaintiff Uzzell had a conversation with the town attorney Gabriel du Sablon during which he indicated that he had spent over two hours on October 18, 2019, talking to Defendant Johnson about the need for Defendant Johnson to stop making racist remarks about African Americans and creating a hostile work environment for Town citizens and employees.

81. Plaintiff Whitehead formally addressed Defendant Johnson's racist remarks and informed the entire Board of Commissioners in a closed session at its December 2, 2019 meeting that Johnson had referred to Town employees who were Black as "stupid nigger," "little nigger," "lazy nigger," "monkey nigger," and that he had threatened them by stating that "we have to get those niggers out of town hall."

21

82. Plaintiff Whitehead told the commissioners that such racist remarks were "very degrading" and negatively impacted employee morale, as well as making town employees feel threatened and creating a hostile work environment.

83. She asked the commissioners to take action to rectify the situation for the employees and citizens of the Town who had lost faith in the ability of the Board to be fair and unbiased

84. Upon information and belief, town employees opposing the racist environment have been subjected to additional discrimination and retaliation for resisting or opposing Defendant David Johnson's racist statements or actions. For example, Commissioner Judy Mason came to Plaintiff Whitehead's office on December 30, 2019, to ask when she and the newly elected Mayor, Defendant Jeff Johnson (Defendant Johnson's son) would be able to sign checks for the Town. She indicated that she understood it was supposed to be within a week after they were sworn in as mayor and mayor pro tem. She stated, "it has been long enough, and I am not saying this because of the color of your skin." The situation was very tense. Defendant Mason then repeated that she was Mayor pro tem to which Plaintiff Whitehead repeated that she knew that she was Mayor pro tem. Then, Defendant Mason changed the subject and started talking about her broken foot and her hand.

85. As another example of discrimination and/or retaliation, upon information and belief, Commissioner Peggy Lamm visited Town hall on January 3, 2020. She

was present while Plaintiff Melissa Hayman was waiting on a citizen. When the citizen indicated that she recognized Plaintiff Whitehead, but had forgotten her name, Plaintiff Whitehead introduced herself.

86. At that point, Commissioner Lamm stated that Plaintiff Whitehead's name should be Teresa "Blackhead." Plaintiff Whitehead was embarrassed and felt demeaned by the remark and pretended not to hear Commissioner Lamm and did not respond to it. Plaintiff Hayman was also embarrassed by Commissioner Lamm's remark and felt very uncomfortable due to the effect it had on her co-worker and because Plaintiff Hayman is also Black.

87. At a Board of Commissioners meeting on January 6, 2020, at least three Lucama residents, Gladys Martinez, Helen Torres, and Mariann Crabtree called for Defendant Johnson to step down because of his racist remarks and his threatening behavior. Resident Crabtree recounted an incident when Defendant Johnson threatened her at the post office and drove his golf cart at her in such a manner as to put her in reasonable fear of immediate physical injury.

88. At this same meeting, the Board voted to accept the resignation of Brenda Blalock who had previously given notice of her resignation on December 20, 2019. Upon information and belief, Blalock resigned her position as stating that she could not with a clear conscience sit on the Board of Commissioners "knowing what they are doing or saying."

89. Upon information and belief, she expressed concern that since she and Plaintiff Uzzell had run for commissioner and been elected in 2017 that the use of the "N-word" had surfaced as an ongoing issue for Town employees and citizens and she could not be part of such a Board. Since the issue had arisen, the Board had taken no action to discipline Defendant Johnson, removed him from his Commissioner position, or to reassure either citizens or Town employees that they or their property were not in any danger due to their race

90. Upon information and belief, at the February 3, 2020 meeting of the Town Board, citizen Yvonne Williams spoke to the Town Board about the use of racial epithets to refer to African American citizens and employee. She asked the Board of Commissioners how they planned to address the allegations that the use of racial epithets. She specifically asked Defendant Johnson if he had ever used racial epithets. Johnson denied the allegation. Johnson's denial was a lie.

91. Williams also alleged that the CVFD under the supervision of Defendant David Johnson and Defendant Jeff Johnson had failed to fulfill its obligations and had violated the civil rights of an African American citizen by refusing to provide assistance and refusing to touch the citizen even though she was bleeding from her nose and her mouth.

92. Upon information and belief, on February 4, 2020, Defendant Johnson and Plaintiff Hare were driving to look at property, as a part of their job duties for the Town. Defendant Johnson asked Plaintiff Hare if the person they were going

to see was black or white. Defendant Johnson also informed her that none of the Blacks were speaking to him but that he was not "losing any sleep over it." He also indicated to her that he was going to find out who reported him to the EEOC. Hare reported these remarks to one or more of the Plaintiffs.

93. On February 4, 2020, an employee supervised by Plaintiff Whitehead informed her that they had been questioned by agents of the NC League of Municipalities at the CVFD, where Defendant Johnson is the Fire Chief, and his son is the Assistant Fire Chief. The employee was told that "they" were not going to make Defendant Johnson "step down." This employee was also questioned about other work matters. This revelation convinced Plaintiffs that no one was going to take action to protect them and stop the hostile work environment.

94. Finally, on March 4, 2020, Plaintiff Whitehead and Plaintiff Uzzell were required by the Defendants to leave an official Town Board meeting in order for the Defendants to consult with the Town attorney. Plaintiff Uzzell as a duly elected Commissioner was entitled as a matter of law to be present at any session of the Town Board, whether open or closed, and the exclusion of her from that meeting was illegal. In addition, upon information and belief, the participants in that meeting intentionally turned off the recording of the meeting in order to conceal the discussion from the public and to willfully fail to maintain a public record required by law.

95. Upon information and belief, since Plaintiffs have asserted their rights to be free from a racially hostile work environment and since they have filed charges with the EEOC about the same, Defendants have disregarded the fiscal constraints and policies in place to protect the fiscal integrity of the Town's finances in violation of N.C. G.S. § 159-181 and have abused their authority as elected officials to circumvent the Town Administrator's authority and duty to control and manage the Town funds and to be a signatory on any expenditure of Town funds. Defendants should be removed from office because of the same abuse of authority pursuant to the power of the Local Government Commission under the same statute.

96. Plaintiffs have suffered emotional and physical distress due to the degradation they have been subjected to by not only the use of racial epithets by Defendant Johnson but also by the lack of condemnation by the other Defendants and the public and repeated failure to take any action whatsoever to address the Plaintiffs' situation and the prevailing hostile and fearful atmosphere created by the racially charged remarks and their tolerance by Town officials.

## PREAMBLE TO THE CAUSES OF ACTION

According to the United States Supreme Court, the Act of April 20, 1871, ch. 22, 17 State 13 "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States and For Other Purposes" was passed as a result of the "widespread acts of violence perpetrated against the freedmen and

loyal white citizens." *Jett v. Dallas Indep. School Dist.,* 491 U.S. 701, 723-24, 109 S. Ct. 2702, 2716-17, 105 L. Ed. 2d 598 (1989).

> First, unlike any portion of the 1866 Act, this statute explicitly ordained that any "person" acting under color of state law or custom who was responsible for a deprivation of constitutional rights would "be liable to the party injured in any action at law." Thus, "the 1871 Act was designed to expose state and local officials to a new form of liability." *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 259, 101 S. Ct. 2748, 2755, 69 L.Ed.2d 616 (1981). Second, the 1871 Act explicitly provided original federal jurisdiction for prosecution of these civil actions against state actors. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S. Ct. 2304, 2309, 105 L.Ed.2d 45 (1989) ("[A] principle purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims"); *accord, Mitchum v. Foster*, 407 U.S. 225, 239, 92 S. Ct. 2151, 2160, 32 L.Ed.2d 705 (1972). Third, the first section of the 1871 Act was explicitly modeled on § 2 of the 1866 Act, and was seen by both opponents and proponents as amending and enhancing the protections of the 1866 Act by providing a new civil remedy for its enforcement against state actors. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 610–611, n. 25, 99 S. Ct. 1905, 1912, n. 25, 60 L.Ed.2d 508 (1979) ( "Section 1 of the [1871] Act generated the least concern; it merely added civil remedies to the criminal penalties imposed by the 1866 Civil Rights Act"); *Monroe v. Pape*, 365 U.S. 167, 185, 81 S. Ct. 473, 483, 5 L.Ed.2d 492 (1961); *Mitchum, supra*, 407 U.S., at 238, 92 S. Ct., at 2160.

*Id.* In *Jett,* the Supreme Court remanded the issue to the Court of Appeals to determine whether the defendants in that lawsuit had "final policymaking authority" as to the actions complained to be a deprivation of the plaintiff's civil rights., *id.*at 738, 109 S. Ct. at 2724, 105 L. Ed. 2d at 598, and whether the defendants acted according to a custom or policy within the meaning of *Monell v. Dep't of Soc. Svcs of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018,

2035–36, 56 L. Ed. 2d 611 (1978) (holding that "[l]ocal governing bodies,

therefore, can be sued directly under § 1983 for monetary, declaratory, or

injunctive relief where, as here, the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers.")

## FIRST CAUSE OF ACTION
### (Denial of Due Process and the Equal Protection of Law
### in violation of 42 U.S.C.A. § 1983 and 42 U.S.C.A. § 1985)

97. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through

96 above and incorporate same by reference as if more fully set forth here.

98. This is an action for deprivation of constitutional rights under color of state law

brought pursuant to the recodification section 1979 of the Civil Rights Act of

1971, 42 U.S.C.A. §§ 1983 and 1985 for remedies for Defendants' deprivation of

Plaintiffs' civil rights. By this action, Plaintiffs seek all legal and equitable relief

to which Plaintiffs may be entitled, including, but not limited to compensatory

and punitive damages, attorney's fees and costs, prejudgment interest, and

injunctive relief against all Defendants.

99. Defendants have denied Plaintiffs the full benefits of their employment with and

citizenship in the town  based on their race and/or opposition to illegal

discrimination.  Defendants have retaliated against Plaintiffs based on their

complaints about illegal discrimination and the denial of the rights and privileges due them as employees and citizens of the Town of Lucama.

100. These actions are in violation of federal law which prohibits discrimination based on race, and arbitrary and capricious government action, both of which are prohibited by the due process and equal protection provisions contained in the 5th and 14th Amendments of the United States Constitution.

101. Plaintiffs are informed and believe that the Defendants both acted individually and have conspired and acted in concert with each other and their predecessors, have used their authority within the Town of Lucama to discriminate against individuals because of their race and other impermissible bases and have acted arbitrarily to deny and award the benefits and privileges of employment and citizenship on the basis of race and other impermissible bases, to such an extent that such actions have become a policy and practice of the Town of Lucama.

102. This discriminatory and illegal conduct was authorized, ratified or directed by Defendants, and each of them, thereby justifying an award of punitive damages against the Defendants in an amount sufficient to punish them and make an example of them.

103. Defendant Johnson by his actions, and the other Defendants, by condoning his actions, have acted in concert by allowing and condoning the hostile and racially discriminatory work environment and such an environment has become a custom, policy, and practice of the Town of Lucama. As individuals in charge of

29

the employment of the Plaintiffs and the enjoyment by Plaintiffs as employees and citizens of the Town of Lucama, Defendants have been denied equal access to the services enjoyed by all citizens of the Town and the terms and conditions of employment enjoyed by all employees of the Town. In engaging in all of the alleged actions either directly or by condoning their occurrence, the Defendants, and each of them, were acting under color of their authority and, as such, under color of the statutes, ordinances, regulations, customs, and usages of North Carolina and the Town of Lucama, as "municipal corporation organized under the laws of this State for the better government of the people within its jurisdiction and having the powers, duties, privileges, and immunities conferred by law on cities, towns, and villages." N.C. G.S. § 160A-1(1).

104. By reason of the Defendants' conduct, Plaintiffs have been deprived of rights, privileges, and immunities secured to Plaintiffs by the Constitution of the United States and laws enacted under that Constitution. The conduct of the Defendants, and each of them, was arbitrary and capricious, and intended to deprive Plaintiffs of rights to the equal protection of the law as both employees and citizens of the State and Town. "Without question, the racial epithet of 'nigger' shows an intent to discriminate on the basis of race" and "satisfies plaintiff's burden under 42 U.S.C. § 1981." *Jones v. City of Boston*, 738 F. Supp. 604 (D. Mass. 1990) (noting that "[t]he term 'nigger" is intimidating by its very nature" and citing General

*Bldg. Contractors' Ass'n v. Pennsylvania*, 458 U.S. 375, 389, 391, 102 S. Ct. 3141, 3149, 3150, 73 L.Ed.2d 835 (1982)

105. Moreover, the Defendants who were made aware of the actions of Defendant Johnson and condoned Defendant Johnson's use by failing to take any action, have ratified his actions making them equally liable for the same civil rights violations. See *Wilson v. Evans*, 2007 WL 4287644 (D. S.C. 2007 (citing Jones v. City of Boston, supra and holding that a "'ratification . . . means the express or implied adoption and confirmation by one person of an act . . . by another assumed to act as his agent.'")

106. The Defendant members of the Town Board who failed to discipline him for his conduct either as an employee of the town or as a commissioner have been complicit in Defendant Johnson's use of racial epithets and actions and their failure to take action is a direct cause of injury to the Plaintiffs.

107. As a proximate result of Defendants' actions against Plaintiffs, as alleged above, Plaintiffs have been harmed, in that Plaintiffs have suffered potential benefits relating to the terms and conditions of their employment and the inequitable enforcement of the Town's ordinances with regard to themselves and others as citizens who opposed race discrimination and/or opposed the same. . The injury to Plaintiffs includes emotional and mental distress, physical upset, and physical injury, all constituting general damages in an amount to be determined at trial.

31

108. As a further proximate result of the actions of the Defendants, and Defendants' arbitrary, capricious, and intentional deprivation of Plaintiffs' liberty, Plaintiffs have suffered damage to Plaintiffs' good names, reputations, honor, and integrity.

109. As a further proximate result of the actions of the Defendants, Plaintiffs have been required to retain the services of an attorney to protect Plaintiffs' interests, and Plaintiffs will be responsible for the fees and costs incurred through that representation.

110. The above actions of the Defendants, and each of them, in depriving Plaintiffs of their constitutionally protected rights were done with evil motive or intent, or with reckless or callous indifference to Plaintiffs' rights.

111. Plaintiffs are informed and believe, and therefore allege, that Defendants, and each of them, will continue in their unlawful, unconstitutional conduct unless and until restricted by this court. If Defendants are not restrained, Plaintiffs will suffer ongoing and irreparable injury, loss and damage, and the damages and losses described in this Complaint will continue. Therefore, Plaintiffs request injunctive and mandamus relief as set forth below.

## SECOND CAUSE OF ACTION
## (Violation of 42 U.S.C.A. §§ 1981 and 1982)

112. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 111 above and incorporate the same by reference as if more fully set forth here.

113. Plaintiffs have been deprived of contractual property interests by Defendants' conduct in engaging in and condoning a policy and practice of treating African

American employees and citizens differently from non-African American citizens and employees. Plaintiffs and others similarly situated to them who have opposed the Defendants' actions have also been deprived of contractual property interests by Defendants' conduct in engaging in and condoning a policy and practice of treating such employees and citizens differently. These contractual rights enjoy the protections of the Fifth and Fourteenth Amendments to the United States Constitution, and Defendants denial of such economic and noneconomic benefits to which they are entitled as a result of their status as employees and citizens of the Town of Lucama violates the civil and constitutional rights of Plaintiffs' and those similarly situated to them.

114. Plaintiffs are informed and believe, and therefore allege that for many years, Defendant Johnson and others acting at his behest have intentionally, knowingly, and wrongfully used their respective positions and influence within the Defendant Town to deprive non-White citizens and potential employees from working for the Town and/or being promoted and/ receiving salary increase and/or and receiving the full benefits of Town employment and citizenship and to deprive the citizens of the Town of Lucama the full benefits of the town services to which they are entitled as tax-paying citizens and as citizens entitled to the contractual services provided by the Town for a fee.

115. These activities were without good faith belief in the appropriateness of the conduct and actions, and were done with the intent of interfering with ~~the~~

Plaintiffs' right to contract with the Town, and such conduct and activities did in fact interfere with Plaintiff's contractual relationship with the Town, all to Plaintiff's economic and noneconomic damages in a sum to be proven at time of trial.

116. The mentioned acts of the Defendants in wrongfully interfering with Plaintiffs' contractual relationships both as employees and citizens, as described, were done with malice, fraud, oppression and in conscious disregard of Plaintiffs' rights, thereby entitling Plaintiffs to an award of exemplary and punitive damages in an amount sufficient to punish Defendant District and make examples of them.

## THIRD CAUSE OF ACTION
### (Against the Town of Lucama and Crossroads Volunteer Fire Department, Inc.)

117. Plaintiff refers to paragraphs 1 through 116 above and by this reference incorporates the same here as if fully set forth.

118. This cause of action seeks to redress race discrimination and arises under the provisions of Title VII of the Civil Rights Act of 1991 and 1964, 42 U.S.C.A. §§ 2000e et seq. Plaintiffs seek compensatory damages that are permitted by the Civil Rights Act of 1991, 42 U.S.C.A. § 1981(a).

119. The race of Plaintiffs Uzzell, Whitehead, Hayman, and Taylor is Black.

120. Defendant Town, including its Fire Department, acting through its Board of Commissioners and its Mayor/Assistant Fire Chief and Commissioner/Fire Chief,

34

has discriminated against and retaliated against Plaintiffs because of those Plaintiffs' race, Black, by creating and subjecting Plaintiffs to a racially hostile work environment and different terms and conditions of employment because of their race. Defendants have also discriminated and retaliated against all Plaintiffs because of their opposition to illegal discrimination against others and because of their complaints about race discrimination and/or their opposition to race discrimination.

121. The jurisdictional prerequisites for this cause of action have been fulfilled.

122. The acts of Defendant Town and its agents, officials, and employees violate Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C.A. §§ 2000e et seq., by discriminating against Plaintiffs in their employment relationships with Defendant Town because of Plaintiff's race and/or their opposition to illegal race discrimination. As a result of these acts, Plaintiff suffered lost pay and benefits, and general damages in the form of future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in amounts according to proof, including attorney's fees.

### FOURTH CAUSE OF ACTION
### (Violation of the North Carolina Constitution)

123. Plaintiffs incorporate paragraphs 1 through 122 above as if set forth fully here.

124. Plaintiffs are guaranteed rights under the Constitution and the laws of the State of North Carolina and the Constitution and the laws of the United States.

35

Plaintiffs are entitled to due process of law and the equal protection of the law under both the Constitution of the United States and the Constitution of North Carolina.

125. The conduct of Defendants, and each of them, constitutes a violation of Sections 1, 2, 19, and 32, and 36 of the North Carolina Constitution in that the Defendants, and each of them, have interfered by threats, intimidation, coercion and/or the condoning of such threats, intimation, and coercion, with the exercise by Plaintiffs of Plaintiff's' enjoyment of the rights secured by the Constitution or laws of the United States and the rights secured by the Constitution or laws of North Carolina.

126. As a further and proximate result of the wrongful actions of Defendants, and each of them, Plaintiffs are additionally entitled to recover all damages and remedies in a sum to be proven at the time of trial.

127. The mentioned acts of Defendants, and each of them, were willful, oppressive, malicious, and fraudulent. Plaintiffs are therefore entitled to punitive damages in a sum to be proven at the time of trial.

**INJUNCTIVE RELIEF**

128. The conduct of Defendants in failing to take action to protect the Plaintiffs from a hostile work environment and the continued use by Defendants of their power and influence to circumvent the policies and procedures put in place to protect the public fisc which is under the authority of the Plaintiff Whitehead, whom

Defendants have and will continue to circumvent, unless and until enjoined and restrained by Order of this Court, will cause great and irreparable injury to the Plaintiffs, and the citizens of the community.

129. No one can conceivably be damaged by the issuance of a temporary restraining order, preliminary injunction, or permanent injunction, which would prevent the Defendants from interfering with the Town Administrator's duties and responsibilities to oversee the expenditure of town funds and the supervision of Town employees. There is absolutely no prejudice to anyone that can be shown by Plaintiff Whitehead continuing to perform all of her duties as the Town Administrator, including supervising the expenditure of Town monies and the supervision of Town employees without undue and unwarranted interference from the Defendants. Injunctive relief would maintain the status quo.

130. Plaintiff therefore requests that a restraining order, and ultimately a preliminary and permanent injunction issue as is set forth in the request for relief below.

## JURY DEMAND

131. Plaintiff demands a trial by jury on all claims properly triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against all Defendants, and each of them, as follows:

132.  Special damages in an amount according to proof at the time of trial;

133.  General damages in an amount according to proof at the time of trial;

134.  Punitive or exemplary damages in an amount according to proof at the time of trial;

135.  Costs of suit;

136.  Reasonable attorney's fees pursuant to 42 U.S.C.A. § 1988 and 42 U.S.C.A. §§ 2000e et seq. and for violations of the North Carolina Constitution;

137.  Prejudgment and post-judgment interest;

138.  Injunctive relief to prevent the interference with the Town Administrator's duties and responsibilities to oversee financial expenditures and supervise Town employees; and

139.  Such other and further relief as the court deems proper.


Respectfully submitted, this the 20th day of April 2020.


/S/ VALERIE BATEMAN
Valerie Bateman
NC State Bar:  13417
FORREST FIRM, P.C.
406 Blackwell St., Suite 420
Durham, NC 27701
valerie.bateman@forrestfirm.com
Attorney for Plaintiffs

38

Uzzell et al v. Johson et al

# EXHIBIT  A

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Patricia Uzzell<br>104 Boulder Dr<br>Lucama, NC 27851 | From: | U.S. EEOC-Raleigh Area Office<br>434 Fayetteville Street, Suite 700<br>Raleigh, NC 27601 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **433-2020-01091** | **J. E. Morales,**<br>**Senior Federal Investigator** | **(919) 856-4152** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*          **Elected Official**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Thomas M. Colclough,
Acting District Director

01/22/20

*(Date Mailed)*

cc:     **Theresa Whitehead**
**Town Administrator**
**TOWN OF LUCAMA**
**POB 127**
**Lucama, NC 27851**

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Gene Taylor<br>207 Blalock Rd.<br>Lunana, NC 27851 | From: | Raleigh Area Office<br>434 Fayetteville Street, Suite 700<br>Raleigh, NC 27601 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 433-2020-01110 | Johnnie M. Barrett,<br>Senior Federal Investigator | (919) 856-4087 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[X] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Johnnie M. Barrett*                    01/23/20

Thomas M. Colclough,                    (Date Mailed)
Acting District Director

Enclosures(s)

cc:    Teresa Whitehead
       Town Administrator
       TOWN OF LUCAMA
       111 S Main St
       Lucama, NC 27851

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Melissa Hayman
103 Pearson St N
433-2020-01098
Wilson, NC 27893

From: Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, NC 27601

| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 433-2020-01098 | Jason Matthews, Investigator | (919) 856-4691 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☒ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_signature_

Thomas M. Colclough,
Acting District Director

1.28.2020
(Date Mailed)

Enclosures(s)

cc: Teresa Whitehead
Town Administrator
TOWN OF LUCAMA
Po Box 127
Lucama, NC 27851

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Teresa Whitehead**<br>**2506 Canal Drive NW**<br>**Wilson, NC 27896** | From: **Raleigh Area Office**<br>**434 Fayetteville Street, Suite 700**<br>**Raleigh, NC 27601** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **433-2020-00188** | **Kofi K. Sam,**<br>**Investigator** | **(919) 856-4094** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [X] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [ ] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_____
for    **Thomas M. Colclough,**
**Acting District Director**

01/22/20
*(Date Mailed)*

Enclosures(s)

cc:
**TOWN OF LUCAMA, NC**
**111 S Main St**
**PO Box 127**
**Lucama, NC 27851**

## VERIFICATION OF GENE TAYLOR

STATE OF NORTH CAROLINA

WILSON COUNTY

**GENE TAYLOR**, being duly sworn, deposes and says:

That the contents of the foregoing Complaint about which he has knowledge are true to his own knowledge, except as to matters stated on information and belief, and as to those matters, he believes them to be true.

GENE TAYLOR

Subscribed and sworn to before me by

GENE TAYLOR

on the 21__ of April 2020.

NOTARY PUBLIC

My Commission expires:

April 5, 2021

STATE OF NORTH CAROLINA

WILSON COUNTY

**PATRICIA UZZELL**, being duly sworn, deposes and says:

That the contents of the foregoing Complaint about which she has personal knowledge are true to her own knowledge, except as to matters stated on information and belief, and as to those matters, she believes them to be true.

PATRICIA UZZELL

Subscribed and sworn to before me by PATRICIA UZZELL

on the _21_ of April 2020.

_Kaye L. Ballance_
NOTARY PUBLIC   Kaye L. Ballance

My Commission expires:

_January 13, 2022_

## *VERIFICATION OF TERESA WHITEHEAD*

STATE OF NORTH CAROLINA

WILSON COUNTY

**TERESA WHITEHEAD**, being duly sworn, deposes and says:

That the contents of the foregoing Complaint about which she has knowledge are true to her own knowledge, except as to matters stated on information and belief, and as to those matters, she believes them to be true.

*Teresa Whitehead*
TERESA WHITEHEAD

Subscribed and sworn to before me by

TERESA WHITEHEAD

on the 21 of April 2020.

*Angela P Hagans*
NOTARY PUBLIC

My Commission expires:

July 9, 2021

**YERIFICATION OF MELISSA HAYMAN**

STATE OF NORTH CAROLINA

WILSON COUNTY

**MELISSA HAYMAN**, being duly sworn, deposes and says:

That the contents of the foregoing Complaint about which she has knowledge are true to her own knowledge, except as to matters stated on information and belief, and as to those matters, she believes them to be true.

_____
MELISSA HAYMAN

Subscribed and sworn to before me by

MELISSA HAYMAN

on the 21st of April 2020.

_____
NOTARY PUBLIC

My Commission expires:

March 24, 2022